NOT FOR PUBLICATION

UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF NEW JERSEY

---

JACKLYN CRUZ,

   Plaintiff,

v.

COMMISSIONER OF SOCIAL
SECURITY,

   Defendant.

Civil Action No. 16-03468-BRM

**OPINION**

---

**MARTINOTTI, DISTRICT JUDGE**

Before this Court is Jacklyn Cruz's ("Cruz") appeal from the final decision of the Acting Commissioner of Social Security ("Commissioner"),[1] denying his application for disability insurance benefits. Having reviewed the administrative record and the submissions filed in connection with the appeal pursuant to Local Civil Rule 9.1, and having declined to hold oral argument pursuant to Federal Civil Rule 78(b), for the reasons set forth below and for good cause shown, the matter is **REMANDED** for further proceedings.

**I. BACKGROUND**

On July 15, 2013 Cruz filed a Title II application for a period of disability and insurance benefits, alleging disability since March 15, 2012. (Tr. 192.) On the same day, Cruz also applied for Supplemental Security Income under Title XVI of the Social Security Act ("SSA"), for benefits

---

[1] Upon the Appeals Council's Order denying Cruz's request for a review of the Administrative Law Judge's ("ALJ") decision, the ALJ's decision became the final decision of the Commissioner. (Tr. 1.)

under other programs administered by the Social Security Administration, and for medical assistance under Title XIX of the SSA. (Tr. 196.) On August 19, 2013, Cruz was found "not disabled" by Disability Adjudicator Timothy Doderer in his review of her Title II application. (Tr. 82.) The same adjudicator also found Cruz "not disabled" for the purposes of her Title XVI application on the same date. (Tr. 91.) On May 23, 2014, upon reconsideration of her Title II claim and Title XVI claim Cruz was again found "not disabled." (Tr. 107, 124.) On May 30, 2014, Cruz filed a request for a hearing by an Administrative Law Judge ("ALJ"). (Tr. 140-41.) Cruz, along her with appointed attorney James Langton and Vocational Expert Mr. Mill, testified at the ALJ hearing held on September 3, 2015. (Tr. 32-66.) At the hearing, Cruz's attorney requested an additional thirty days to submit additional medical records, which was permitted by the ALJ. (Tr. 35.) Those records were received and reviewed. (Tr. 19.)

On October 22, 2015, the ALJ issued an unfavorable decision. (Tr. 11.) The decision provides, in relevant part:

> **FINDINGS OF FACT AND CONCLUSIONS OF LAW**
>
> After careful consideration of the entire record, I make the following findings:
>
> **1. The claimant meets the insured status requirements of the Social Security Act through December 31, 2017.**
>
> *2.* **The claimant has not engaged** in **substantial gainful activity since March 15, 2012, the alleged onset date (20 CFR 404.1571** *et seq.,* **and 416.971** *et seq.).*
>
> **3. The claimant has the following severe impairments: heart impairment and mental impairments (20 CFR 404.1520(c) and 416.920(c)).**
>
> . . .
>
> **4. The claimant does not have an impairment or**

**combination of impairments that meets or medically equals the severity of one of the listed impairments in 20 CFR Part 404, Subpart P, Appendix 1 (20 CFR 404.1520(d), 404.1525, 404.1526, 416.920(d), 416.925 and 416.926).**

. . .

**5.** **After careful consideration of the entire record, the undersigned finds that the claimant has the residual functional capacity to perform sedentary work as defined in 20 CFR 404.1567(a) and 416.967(a). The claimant can have no work with public; minimal contact with co-workers and supervisors; can perform simple and repetitive tasks such as those involving one and two-step processes to completion.**

**6.** **In making this finding, the undersigned has considered all symptoms and the extent to which these symptoms can reasonably be accepted as consistent with the objective medical evidence and other evidence, based on the requirements of 20 CFR 404.1529 and 416.929 and SSRs 96-4p and 96-7p. The undersigned has also considered opinion evidence** in **accordance with the requirements of 20 CFR 404.1527 and 416.927 and SSRs 96-2p, 96-5p, 96-6p and 06-3p.**

In considering the claimant's symptoms, the undersigned must follow a two-step process in which it must first be determined whether there is an underlying medically determinable physical or mental impairment(s)--i.e., an impairment(s) that can be shown by medically acceptable clinical and laboratory diagnostic techniques--that could reasonably be expected to produce the claimant's pain or other symptoms.

Second, once an underlying physical or mental impairment(s) that could reasonably be expected to produce the claimant's pain or other symptoms has been shown, the undersigned must evaluate the intensity, persistence, and limiting effects of the claimant's symptoms to determine the extent to which they limit the claimant's functioning. For this purpose, whenever statements about the intensity, persistence, or functionally limiting effects of pain or other symptoms are not substantiated by objective medical evidence, the undersigned must make a finding on the credibility of the statements based on a consideration of the entire case record.

In her function report, the claimant reported that some days she is at doctor's appointments all day. If not, she gets up to shower and watches television all day. If she if feeling depressed she does not dress or bathe, she otherwise has no problems. She is able to make simple meals. Her mom and son do all house and yard work. She is able to ride in cars and drives if she has too. Her mom does the shopping. She watches television for most of the day. She will visit her husband (in jail) if she is up to it; usually about twice a week. She has no trouble with written instructions, but has trouble with spoken instructions. She does not handle stress well and does not get along well with others (Exhibit 7E). Her husband reported similar limitations, noting that she has pain and shaking with most personal care. In addition, he reported that she is able to shop in stores once month for food and toiletries. He noted that she spends time watching television, talking on the phone and interacting with her children. She also attends church once a week. He reported that at times she is not able to follow written or spoken instructions well and needs help with changes in routine (Exhibit 6E).

The claimant alleges a history of a heart murmur, and cardiac catheterization showed an atypical atrial flutter. Pulmonary function testing was normal (Exhibit SF). October 2014 records from Dr. John Rajapakse indicated that the claimant was being seen for low blood pressure and that it might be related to pain medications. It was noted that there was no obvious need for a pace maker, but she had a cardiac monitor inserted in November 14, 2014(Exhibit 13F/14F).

The claimant has also been diagnosed with a bipolar disorder. Psychiatric progress notes from Dr. Jayanta Pal dated August 2012 showed the claimant had begun treatment for her bipolar disorder. On intake, she was given a GAF of 50. Mood was anxious, but mental status was otherwise unremarkable. The claimant reported that her last treatment was last year. She was seen for medication management and overall was doing well, but she reported some depression and anger outbursts. However, October 8, 2013 records show that she had not been entirely compliant with therapy because her therapist had no appointments. She had not missed any medication appointments. She reported that DYFS had stopped paying for the treatment and she could no longer afford care (Exhibit 7F).

The claimant began treatment at Raritan Bay Mental Health Center

in February 10, 2014. Intake mental status examination was unremarkable. GAF was reported as 70. The claimant indicated that she was about to start a college course in phlebotomy (Exhibit l0F).

The claimant was self-referred to Princeton House Behavioral Health Center from December 26, 2014 to January 15, 2015 for severe mood changes. GAFs were reported as between 34 to 58 over the last year. Treatment records show that towards the end of treatment, the claimant stopped attending due to transportation issues and she was discharged for noncompliance (Exhibit 15F). She again presented from February 6 to February 12, 2015 for depression with manic and anxiety symptoms; however, she stopped attending the program on February 19 because "detectives were there to pick her up." (Exhibit l5F). She was again admitted from March 18 to April 17 of 2015 for symptoms related to bipolar disorder. The claimant reported ongoing mood lability, irritability and anxiety. She was noted to be pregnant and was not taking any medications. It was confirmed that the claimant had failed several trials of treatment due to attendance issues. She was discharged in April with a GAF of 45 (Exhibit 18F).

After careful consideration of the evidence, the undersigned finds that the claimant's medically determinable impairments could reasonably be expected to cause the alleged symptoms; however, the claimant's statements concerning the intensity, persistence and limiting effects of these symptoms are not entirely credible for the reasons explained in this decision.

I note that the claimant presented at the hearing very well dressing and meticulously groomed. In fact, it was very noteworthy that the claimant's appearance was well beyond average. Clearly, she had taken great attention to her appearance. She was also pregnant.

The claimant last worked in 2014 as a medical assistant and medical secretary. The earnings were low and sporadic. She explained this was due to her bipolar not being under control, and that she was fired. She said that she would have 'what seems like and attitude towards the patients or co-workers' and was fired but she said that was because she was bipolar. She said she has panic issues, she has a loop recorder, which is an implanted halter monitor. She said this was due to anxiety. She did have a job that lasted 2 years as a medical secretary, which she left due to having a baby. The records show that she has a heart atrial flutter termed atypical (Exhibit 5F).

She said that she has severe depression and that when she does, she not get out of bed. She stated that she also has highs. She said that she yells a lot and gets an attitude. She said when in a manic phase she has a bad temper. She did not describe any of the more typical manic phases such a days of sleeplessness, poor decision making, etc. She stated that she has been getting treatment for this since age 16. She testified that she is not taking psychotropic medication now due to her pregnancy; however, she conceded she continues to take the Xanax despite her pregnancy. She was going to an outpatient program at Princeton House. She said she has one child and another on the way. It was indicated that she had had her 'children' removed by DYFS (Exhibit 10F). She said that she has back pain, but has never had an MRI.

The claimant stated that she cannot work due to her bipolar and heart problems. As noted, her heart problem is an atypical flutter and she did not state that she had limitations because of this. Regarding her bipolar disorder, when asked for specific limitations, she said she gets a poor attitude in dealing with people. She also mentioned her heart condition but the condition does not actually produce any limitations, just a flutter described in the medical reports as 'atypical'. I offered the vocational expert a hypothetical of sedentary to account for the condition although there is really nothing in the file of a medical nature that imposes any exertional limitations.

There was no suggestion that she is not able to concentrate and focus, at least sufficiently to do simple, unskilled work. It is clear she has exceedingly poor interpersonal skills but this would not be an issue if she worked without contact with the public.

Of note, DYFS took the claimant's children away due to drug abuse. In addition, it was also reported that she was on probation for attempting to file fraudulent prescription for pain medications (Exhibit l0F), which lessens the claimant's credibility.

Consequently, based on the entire record, I conclude that the evidence fails to support the claimant's assertions of total disability. Despite the evidence demonstrating that the claimant has suffered from a medically determinable "severe" impairment, the evidence also establishes that the claimant retains the capacity to function adequately to perform many basic activities

associated with work. Although the claimant suffers some limitation due to her impairments, and as a result, her capacity to perform work is affected, I find that the claimant retains the residual functional capacity to perform the exertional demands of sedentary work, with additional limitations as noted above. The residual functional capacity is based upon Exhibits 6E, 7E, 7F, 13F as well as the claimant's testimony.

**7.     The claimant is unable to perform any past relevant work (20 CFR 404.1565 and 416.965).**

The claimant has past relevant work as a medical secretary and as a medical assistant. She cannot perform this work as it involved public contact. Accordingly, the claimant is unable to perform past relevant work.

**8.     The claimant was born on May 21, 1981 and was 30 years old, which is defined as a younger individual age 18-44, on the alleged disability onset date (20 CFR 404.1563 and 416.963). The claimant has at least a high school education and is able to communicate in English (20 CFR 404.1564 and 416.964).**

**9.     Transferability of job skills is not material to the determination of disability because using the Medical-Vocational Rules as a framework supports a finding that the claimant is "not disabled," whether or not the claimant has transferable job skills (See SSR 82-41 and 20 CFR Part 404, Subpart P, Appendix 2).**

**10.    Considering the claimant's age, education, work experience, and residual functional capacity, there are jobs that exist in significant numbers in the national economy that the claimant can perform (20 CFR 404.1569, 404.1569(a), 416.969, and 416.969(a)).**

In determining whether a successful adjustment to other work can be made, the undersigned must consider the claimant's residual functional capacity, age, education, and work experience in conjunction with the Medical-Vocational Guidelines, 20 CFR Part 404, Subpart P, Appendix 2. If the claimant can perform all or substantially all of the exertional demands at a given level of exertion, the medical-vocational rules direct a conclusion of either "disabled" or "not disabled" depending upon the claimant's specific

vocational profile (SSR 83-11). When the claimant cannot perform substantially all of the exertional demands of work at a given level of exertion and/or has nonexertional limitations, the medical-vocational rules are used as a framework for decisionmaking unless there is a rule that directs a conclusion of "disabled" without considering the additional exertional and/or nonexertional limitations (SSRs 83-12 and 83-14). If the claimant has solely nonexertional limitations, section 204.00 in the Medical-Vocational Guidelines provides a framework for decisionmaking (SSR 85-15).

If the claimant had the residual functional capacity to perform the full range of sedentary work, a finding of "not disabled" would be directed by Medical-Vocational Rule 201.28. However, the claimant's ability to perform all or substantially all of the requirements of this level of work has been impeded by additional limitations. To determine the extent to which these limitations erode the unskilled sedentary occupational base, the Administrative Law Judge asked the vocational expert whether jobs exist in the national economy for an individual with the claimant's age, education, work experience, and residual functional capacity. The vocational expert testified that given all of these factors the individual would be able to perform the requirements of representative occupations such as addresser (209.587-010)(50,000 jobs in the national economy); document prep. worker (249.587-018)(125,000 jobs in the national economy); scale operator (737.687-126)(75,000 jobs in the national economy). All jobs SVP 2, and sedentary.

Pursuant to SSR 00-4p, the undersigned has determined that the vocational expert's testimony is consistent with the information contained in the Dictionary of Occupational Titles.

Based on the testimony of the vocational expert, the undersigned concludes that, considering the claimant's age, education, work experience, and residual functional capacity, the claimant is capable of making a successful adjustment to other work that exists in significant numbers in the national economy. A finding of "not disabled" is therefore appropriate under the framework of the above-cited rule.

**11. The claimant has not been under a disability, as defined in the Social Security Act, from March 15, 2012, through the date of this decision (20 CFR 404.1520(g) and**

> **416.920(g)**).
>
> ### DECISION
>
> Based on the application for a period of disability and disability insurance benefits filed on June 18, 2013, the claimant is not disabled under sections 216(i) and 223(d) of the Social Security Act.
>
> Based on the application for supplemental security income filed on June 18, 2013, the claimant is not disabled under section 1614(a)(3)(A) of the Social Security Act.

(Tr. 14-22.)

The Appeals Council denied Cruz's request for review on April 13, 2016. (Tr. 1-6.) Therefore, the ALJ decision became the final decision of the Commissioner, and on June 15, 2016, Cruz filed this appeal. (ECF No. 1.)

## II.  STANDARD OF REVIEW

On a review of a final decision of the Commissioner of the Social Security Administration, a district court "shall have power to enter, upon the pleadings and transcript of the record, a judgment affirming, modifying, or reversing the decision of the Commissioner of Social Security, with or without remanding the cause for a rehearing." 42 U.S.C. § 405(g); *see Matthews v. Apfel*, 239 F.3d 589, 592 (3d Cir. 2001). The Commissioner's decisions regarding questions of fact are deemed conclusive on a reviewing court if supported by "substantial evidence in the record." 42 U.S.C. § 405(g); *see Knepp v. Apfel*, 204 F.3d 78, 83 (3d Cir. 2000). This Court must affirm an ALJ's decision if it is supported by substantial evidence. *See* 42 U.S.C. §§ 405(g), 1383(c)(3). Substantial evidence is "more than a mere scintilla. It means such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Richardson v. Perales*, 402 U.S. 389, 401 (1971) (quoting *Consol. Edison Co. v. NLRB*, 305 U.S. 197, 229 (1938)). To determine whether

an ALJ's decision is supported by substantial evidence, this Court must review the evidence in its totality. *Daring v. Heckler*, 727 F.2d 64, 70 (3d Cir. 1984). However, this Court may not "weigh the evidence or substitute its conclusions for those of the fact-finder." *Williams v. Sullivan*, 970 F.2d 1178, 1182 (3d Cir. 1992) (citation omitted). Accordingly, this Court may not set an ALJ's decision aside, "even if [it] would have decided the factual inquiry differently." *Hartranft v. Apfel*, 181 F.3d 358, 360 (3d Cir. 1999) (citations omitted).

### III. THE FIVE-STEP SEQUENTIAL EVALUATION PROCESS

Under the Social Security Act, the Social Security Administration is authorized to pay Social Security Insurance to "disabled" persons. 20 C.F.R. § 404.1520(a). A person is "disabled" if he is unable to engage in "any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months." 20 C.F.R. § 404.1505(a). A person is unable to engage in substantial gainful activity when his physical or mental impairments are of such severity that he is not only unable to do his previous work but cannot, considering his age, education, and work experience, engage in any other kind of "substantial gainful work that exists in the national economy." *Id.*

Regulations promulgated under the Social Security Act establish a five-step process for determining whether a claimant is disabled. 20 C.F.R. § 416 .920(a)(1). First, the ALJ determines whether the claimant has shown that he or she is not currently engaged in "substantial gainful activity." *Id.* §§ 404.1520(b), 416.920(b); *see Bowen v. Yuckert*, 482 U.S. 137, 146-47 n.5 (1987). If a claimant is presently engaged in any form of substantial gainful activity, he or she is automatically denied disability benefits. *See* 20 C.F.R. § 404.1520(b); *see also Bowen*, 482 U.S. at 140. Second, the ALJ determines whether the claimant has demonstrated a "severe impairment"

or "combination of impairments" that significantly limits his physical or mental ability to do basic work activities. 20 C.F.R. §§ 404.1520(c), 416.920(c); *see Bowen*, 482 U.S. at 146-47 n.5. Basic work activities are defined as "the abilities and aptitudes necessary to do most jobs." 20 C.F.R. § 404.1521(b). These activities include physical functions such as "walking, standing, sitting, lifting, pushing, pulling, reaching, carrying or handling." *Id.* A claimant who does not have a severe impairment is not considered disabled. *Id.* at § 404.1520(c); *see Plummer v. Apfel*, 186 F.3d 422, 428 (3d Cir. 1999).

Third, if the impairment is found to be severe, the ALJ then determines whether the impairment meets or is equal to the impairments listed in 20 C.F.R. Pt. 404, Subpt. P., App. 1 (the "Impairment List"). 20 C.F.R. § 404.1520(a)(4)(iii). If the claimant demonstrates that his or her impairments are equal in severity to, or meet those on the Impairment List, the claimant has satisfied his or her burden of proof and is automatically entitled to benefits. *See id.* at §§ 404.1520(d), 416.920(d); *see also Bowen*, 482 U.S. at 146-47 n.5. If the specific impairment is not listed, the ALJ will consider in his or her decision the impairment that most closely satisfies those listed for purposes of deciding whether the impairment is medically equivalent. *See* 20 C.F.R. § 404.1526(a). If there is more than one impairment, the ALJ then must consider whether the combination of impairments is equal to any listed impairment. *Id.* An impairment or combination of impairments is basically equivalent to a listed impairment if there are medical findings equal in severity to all the criteria for the one most similar. *Williams*, 970 F.2d at 1186.

If the claimant is not conclusively disabled under the criteria set forth in the Impairment List, step three is not satisfied, and the claimant must prove at step four whether he or she retains the "residual functional capacity" ("RFC") to perform his or her past relevant work. 20 C.F.R. §§ 404.1520(e)-(f), 416.920(e)-(f); *Bowen*, 482 U.S. at 141. Step four involves three sub-steps:

> (1) the ALJ must make specific findings of fact as to the claimant's [RFC]; (2) the ALJ must make findings of the physical and mental demands of the claimant's past relevant work; and (3) the ALJ must compare the [RFC] to the past relevant work to determine whether claimant has the level of capability needed to perform the past relevant work.

*Burnett v. Comm'r of Soc. Sec. Admin.*, 220 F.3d 112, 120 (3d Cir. 2000) (citations omitted). When determining RFC, "[a]n ALJ may reject a treating physician's opinion outright only on the basis of contradictory medical evidence, but may afford a treating physician's opinion more or less weight depending upon the extent to which supporting explanations are provided." *Hoyman v. Colvin*, 606 F. App'x 678, 679-80 (3d Cir. 2015) (quoting *Plummer*, 186 F.3d at 429). Unsupported diagnoses are not entitled to great weight. *Jones v. Sullivan*, 954 F.2d 125, 129 (3d Cir. 1991). Moreover, an administrative law judge must provide the reason for providing more or less weight to the evidence. *See Fragnoli v. Massanari*, 247 F.3d 34, 42 (3d Cir. 2001).

The claimant is not disabled if his RFC allows him to perform his past relevant work. 20 C.F.R. § 416.920(a)(4)(iv). However, if the claimant's RFC prevents him from doing so, an administrative law judge proceeds to the fifth and final step of the process. *Id.* The final step requires the administrative law judge to "show [that] there are other jobs existing in significant numbers in the national economy which the claimant can perform, consistent with her medical impairments, age, education, past work experience, and [RFC]." *Plummer*, 186 F.3d at 428. In doing so, "[t]he ALJ must analyze the cumulative effect of all the claimant's impairments in determining whether she is capable of performing work and is not disabled." *Id.* (citation omitted). Notably, an administrative law judge typically seeks the assistance of a vocational expert at this final step. *Id.* (citation omitted).

The claimant bears the burden of proof for steps one, two, and four. *Sykes v. Apfel*, 228 F.3d 259, 263 (3d Cir. 2000). Neither side bears the burden of proof for step three "[b]ecause step

three involves a conclusive presumption based on the listings." *Id.* at 263 n.2 (citing *Bowen*, 482 U.S. at 146-47 n.5). An administrative law judge bears the burden of proof for the fifth step. *See id.* at 263.

## IV. DECISION

The basis of Cruz's RFC objection is multifaceted.[2] First, Cruz argues the ALJ erred by not basing the determination of her RFC on "substantial evidence" and by producing a decision that "recites virtually none of the evidence, particularly those hundreds of pages which directly contradict the RFC finding and the idea that plaintiff would never be off-task or suffer significant absences." (ECF No. 13 at 28.) Cruz argues that the ALJ engaged in "a blanket recitation of the evidence followed by an announcement of plaintiff's RFC" and that "[t]he actual psychiatric evidence never enters into the decisional conversation." (*Id.* at 18, 22.)

In determining RFC, "the ALJ must consider all evidence before him" and "explain his reasons for discounting all of the pertinent evidence before him," including medical and non-medical evidence. *Burnett v. Comm'r of Soc. Sec. Admin.*, 220 F.3d 112, 121-22 (3d Cir. 2000). "Although the ALJ may weigh the credibility of the evidence, he must give some indication of the evidence which he rejects and his reason(s) for discounting such evidence." *Id.* (citing *Cotter*, 642 F.2d at 705). "In the absence of such an indication, the reviewing court cannot tell if significant probative evidence was not credited or simply ignored." *Id.* (citing *Cotter*, 642 F.2d at 705). Conclusory statements have been found to be "beyond meaningful judicial review." *Cotter*, 642 F.2d 700, 704–05 (3d Cir. 1981).

---

[2] Cruz later argues that the ALJ's decision "suggests the appearance of the ALJ's bias against the plaintiff." However, since this Court is remanding solely on a different argument, it need not consider that argument at this time.

Cruz cites a portion of the Princeton House Behavior Health Center record stating she presented with depressive, manic, and anxiety symptoms, history of abuse, inability to engage in treatment, mood swings, and outbursts, among others. Cruz argues, in furtherance of this medical record:

> [The] evidence contains scores of pages of the same psychiatric symptomotology as recited above [from the Princeton House record]. That symptomotology depicts a woman with psychiatric disturbance since her teenage years and extending through the present. It portrays the classic downward trajectory of poorly-controlled or uncontrolable [sic] bipolar disorder with its manic phases (hyperactivity, promiscuity, thoughtless adventurism, petty criminal behavior, fleeding [sic] relationships, negligent parenting, attention deficits, poor money management) and its deep depressive phases (absenteeism, self-mutilation, opioid abuse, fixation on past physical, sexual and emotional abuse, external stressors and internal emotional struggles, neglect of hygiene, self isolation). The decision does not deal with plaintiff's bipolar disorder *because it won't even name plaintiff's bipolar disorder at any step in the sequential evaluation, any specific factual finding or any question to the vocational expert*.

(ECF No. 13 at 23 (emphasis added).)

To the contrary, however, the ALJ explicitly refers to, *inter alia*, Cruz's bipolar condition, her depression and anger outbursts, her treatment at Raritan Bay Mental Health Center and at Princeton House Behavior Health Center, her severe mood changes, mood lability, irritability, and anxiety. To say otherwise is mistaken. Thus, to the extent Cruz argues "[t]he actual psychiatric evidence never enters into the decisional conversation," that argument is rejected.

Next, Cruz argues the RFC determination is "utterly undefended" in the decision and calls for a *de facto* finding of disability. Specifically, the RFC states that Cruz can only have "minimal" contact with supervisors and coworkers, but the minimum oversight recognized by the DOT is "occasional supervision," which Cruz cannot tolerate per the ALJ's own finding. Cruz cites nothing in support of this proposition and therefore, the argument is rejected.

However, to the extent Cruz argues that the ALJ did not consider all the evidence in posing the hypothetical questions to the vocational expert and that they did not accurately portray claimant's impairments, the Court agrees. Consequently, the ALJ may have improperly relied on the expert's opinion in determining the RFC. A hypothetical question to a vocational expert must reflect all of the claimant's impairments that are supported by the record. *Ramirez v. Barnhart*, 372 F.3d 546, 550 (3d Cir. 2004); *Plummer v. Apfel*, 186 F.3d 422, 431 (3d Cir. 1999). If it is not, the expert's opinion cannot be considered substantial evidence. *Ramirez*, 372 F.3d at 550. In posing hypothetical questions to the vocational expert, the ALJ may not substitute his or her own expertise to refute the record's evidence of the claimant's limitations. *Rutherford v. Barnhart*, 399 F.3d 546, 554 (3d. Cir. 2005).

Here, the ALJ found Cruz "retains the [RFC] to perform the exertional demands of sedentary work, with additional limitations," stating, in part, that "there was no suggestion that she is not able to concentrate and focus, at least sufficiently to do simple, unskilled work." Cruz takes particular issue with the sedentary aspect of the RFC. The ALJ states, "[C]laimant retains the residual functional capacity to perform the exertional demands of sedentary work," but makes such a statement in a conclusory fashion. It is unclear from the ALJ's decision why or how Cruz would be able to perform sedentary work or why that limitation should be incorporated in the RFC or the questions to the vocational expert.[3] The sole, indirect reference to sedentary work was claimant's past relevant work as a medical secretary and assistant, but it is unclear from the record and the ALJ's decision whether Cruz could maintain that job and what the reason was for her

---

[3] The transcript indicates this may have been included due to claimant's heart condition, but such an inclusion is not apparent from the decision. (*See* Tr. 63.)

departure.[4] The ALJ considered Cruz's inability to focus and concentrate in determining that simple, unskilled work was necessary, but nothing is stated in support of the "sedentary" finding.

This Court need not decide whether a sedentary limitation is ultimately proper. However, if the ALJ chooses to reject certain evidence in making its determination, it "must give reason(s) for discounting the evidence." *Burnett*, 220 F.3d at 121. Without such an indication, this Court cannot "tell if significant probative evidence was not credited or simply ignored." *Id*. Here, the Court is unable to ascertain whether the ALJ relied on a particular report for determining that claimant's functional capacity is at a sedentary level, or if a report was ignored or discounted, or if the ALJ's own opinions were relied upon when the hypothetical question which included "sedentary" was posed to the vocational expert. Because this Court has no way of knowing, the Commissioner's final decision is **VACATED**, and the case is **REMANDED** to the ALJ for a further evaluation and determination of the RFC.

## V. CONCLUSION

For the reasons set forth above, the Court **REMANDS** this matter for further proceedings.

**Date:** February 28, 2019                          */s/ Brian R. Martinotti*  
                                                    **HON. BRIAN R. MARTINOTTI**  
                                                    **UNITED STATES DISTRICT JUDGE**

---

[4] The ALJ's decision references her pregnancy as the reason but cites generally to the hospital record without reference to departure from her job. Cruz's own testimony states it was because interpersonal issues.